By the Court. Bosworth, J.
Prior to effecting the insurance in question, the defendants had insured the firm of James M. Hood & Go. $7500, “ on a ship, on the stocks, in a shipyard on the west side of Taunton river, in Somerset, Mass.”
On the 20th of September, 1849, the policy was transferred to a barque building by the same firm. The transfer reads thus, viz.:
“ Sept. 20, ’49. This insurance is transferred to cover a barque (on the stocks near said ship) building for Howes, Godfrey & Co., with privilege to build another vessel alongside. “$7500, 2 months $22/^-”
On the 17th of October, 1849, a fire originated in the ship referred to, being then nearly completed, by which the ship and the frame of the contemplated barque were burned. So much of the barque as was on the stocks was not burned.
The plaintiff is. by assignment, the owner of the claim of his firm, to be indemnified for the loss.
At the time of the fire, the keel of the barque was blocked, some part of the frame was moulded, hewn, and bevelled, some of it had been actually laid across the keel and fastened to it, the whole frame was in the yard, and two thirds or three quarters was moulded; the stem-frame and the stern-frame were alongside, and had been fastened together, and were ready to be *198 put up. The rest was all ready to be put up. It was not framed, but ready for framing: “ this timber was so cut, as to supply this vessel and no other, and was useless for any other purpose.”
Four hundred and sixty-two sticks, which would have made forty-four frames, and which were ready for framing, were burned: the stem and stem frames were not burned. About ' \ one third of the' sticks burned were north of the ship, the others lay between the ship and the barque. The north boundary of the yard was about 120 feet from the keel. The frame was in the usual place for laying timber for a vessel building like the barque. A verdict was rendered for the plaintiff under the direction of the court for the value of the framework burned.
The main question is, What was covered by the policy ? Did it cover the framework of the barque, or only so much of the uncompleted barque as was fastened together and upon the stocks ?
The plaintiff insists that the former, and the defendant that the latter is the true construction.
The plaintiff insists that the frames which had been prepared expressly and solely for the barque, and were in' a condition to be framed into and made literally a part of the body of it, which were alongside of it to be thus applied, and which had been so adapted for the uses for which they were designed as to be valueless for any other, were, within the fair meaning ’ of this policy, a part of the barque, and were covered by the policy.
The defendant, on the other hand, contends, that until they were actually incorporated into the body of the barque, and had been fastened in the places for which they were designed, they formed no part of the barque, but were properly speaking only “ lumber and building materials contained in the shipyard,” and were not covered by the policy..
The words used in this policy have not received a settled legal construction, nor is it shown that by use and practice between assurers and assured, they have acquired a specific sense, so that the court can construe them according to such acquired sense and meaning.
*199 The defendant does not insure, in terms, an “ unfinished barque,” but a “ barque building.” The defendant does not insure a subject matter, which has at the time a definite form, which it is to retain while covered by the policy, and the materials, then composing which, are alone covered by the policy.
But a “ barque (on the stocks) building” is insured. These words clearly imply that some part of the structure was then on the stocks, and that the policy was intended to cover more than so much of the structure as was then on the stocks. The defendant concedes that whatever materials should be subsequently incorporated into the structure, would from the moment of their actual incorporation be covered by the policy.
Is the fact of such actual incorporation the test by which to determine, whether the materials, designed and fitted to be component parts of it, and thereby unfitted for anything else, and being in their proper place to be actually incorporated in it, are in that condition a part of the barque, within the meaning of this policy ?
The participle, “building,” in its popular signification, means “ framing and erecting.”
Hence it is a common expression, that a house is “framed,” when the process of building has reached a point that the framework is in a condition to be put together.
The house is raised when the parts of the framework are placed and secured in their proper position, in a standing structure.
Suppose a “ house building,” was the subject insured, and a fire should happen after the framing was completed, and before the framework was put together, and the parts firmly pinned to each other, would not the injury to the frame, and all or any of its parts, be covered by the policy ?
Suppose the words, “ on the stocks,” were stricken from the policy, would the intention of the parties, as indicated by the policy, be different from what it must now be presumed to have been ? Suppose it had been simply “ on a barque building in their ship-yard, in Somerset,” would not the policy cover everything made to be, and fitted to be a part of it, and rendered valueless for anything else, although the parts had *200 not been placed in position, and firmly secured in their appropriate places, when the fire occurred ?
Does the term, “ on the stocks,” as here used, mean more than this—that the barque, which was being framed and erected, and which was to be covered by the policy, was to be constructed upon the keel then on the stocks, and that nothing was to be deemed part of the subject matter insured, except what might be designed and actually fitted to be. a part of the particular structure thus begun? Were not these words used to identify the several parts of this structure, and to distinguish them from parts of the ship in which 'the fire originated, and from" parts of that which the plaintiff had the privilege of building alongside of the barque, if he should avail himself of such privilege ?
The materiel on the stocks was not a barque; it was not the whole of the subject matter insured. It was a part of the contemplated barque, which the plaintiff was engaged in building, but had not built. It was in its proper-place for laying those parts, of a barque building, which had been fitted to the extent these had, for the uses contemplated.
The frame pieces which were burnt, which had been so far wrought with the design to make them a part of the contemplated barque as to be in a condition to be framed, and actually incorporated into the parts on the stocks, which were in the proper place to be conveniently applied to that use, were also parts of the contemplated barque which the plaintiff' was building.
They were not parts of a barque actually built. No such thing existed, or was insured. All things made, for the purpose of forming an indispensable part of the contemplated structure, which had been so far completed as to be adapted to such purpose, and which, in consequence of such adaptation, were valueless for anything else, in common parlance and good sense, were equally parts of the contemplated barque, or of the barque building. Without the parts burned, or a substitute like them, there could be no barque.
They were as indispensable to the existence of a completed barque as the part on the stocks. They were as truly in their appropriate place, to answer the purpose for which they were designed, as the part on the stocks.
*201 If not parts of the contemplated barque, what were they ?
Were they “lumber and building materials?” It seems the plaintiffs’ firm had a policy effected with another company on “ lumber and building materials,” in the shipyard, in which they were building a barque.
It would seem that one or the other of the policies should » cover the loss, unless, upon sound principles of construction, it may be said, that the materials thus insured, may be so changed in form and character by the labor of the artisan, with a view to make them parts of a barque building and also insured, as to be adapted, and in a position to be applied to the end contemplated, and thus made valueless for any other purpose, and yet be neither building materials, nor parts of a barque building; and while in this particular condition be covered by neither policy.
The phrase, “ lumber and building materials,” conveys the idea of subjects, which may be fitted as well into one structure of a particular class as into any other, and that they are in a condition to be wrought into a form, to be as well parts of one vessel, as of any other vessel of the class.
They indicate the idea of materials no further wrought than to subserve and be adapted to building purposes generally. They do not convey the idea of materials formed and cut, designed and adapted to be parts of a specific building in contemplation, and which, as fast as labor can do it, are being incorporated into the intended building, and which, by means of such adaptation, are valueless for any other purpose.
It seems quite clear that they do not answer the description of “ lumber and building materials,” as these terms are commonly understood. If they do not, the loss could not have been recovered under the policy on property of that character.
Suppose a wheelwright should effect a policy on the lumber and materials for building carriages, &c., in certain designated premises, and subsequently should effect another policy with another company, on a carriage building for A. B. in the same premises.
After some of the materials have had so much labor expended upon them, that the hubs are morticed to receive the spokes, and the spokes are completed and in their proper position to be, and for the purpose of being, driven into them ; and the fellies are completed to be fitted to the spokes, and the *202 parts of the body so fashioned as to be in a condition to be put together, all are consumed by fife ? Will either policy, on fair principles of construction, attach to them, and if S0j which? Are they, in this state, lumber and materials for building carriages, &c., or are they parts of the contemplated carriage for which they are fitted and were designed? or are they neither?
If either, it would seem to be quite clear that they are parts of the “ carriage building.”
In construing this policy, the fact that the part on the stocks was not burned, is of no consequence. If that had been burned also, the question whether the policy covered any other parts of the contemplated barque, must necessarily have been determined by the same principles and considerations which must control this case on .the facts before us.
If all the parts had been burned, including the keel, still, on the construction claimed by the defendant’s counsel, neither the stem-frame, nor the stern-frame, nor any parts of the frame which might have been lying upon the keel, but not fastened to it, would have been covered by the policy.
.Such a construction is much narrower'than can be reasonably supposed to have been within the contemplation of the parties to a contract, the'object of which would seem to have been to secure' an indemnity to. the plaintiff against loss from injury by fire to parts of a vessel which he was laboring to construct, while so constructing it, or for a period named.
Such a construction would limit the operation of the policy to such parts of the contemplated structure as might be on the stocks, and actually united to’ each other, while other united but detached parts, lying alongside of .the keel, equally approximated to actual completion, and of far greater aggregate value, would not be covered by it.
We cannot think that such was the intention of the parties to the contract, nor that its terms coerce us to adopt the construction claimed by the defendants.
We concede that Mason & Leap v. The Franklin Ins. Co., 12 Gill. & John. R. 469, is, in its facts, substantially like this. That was decided as a cage of first" impression. That is the only case, apparently, in point, to furnish any aids in the disposition of this case not had by the court in the decision of that. In *203 that case, the court gave the conclusions which they formed, without stating the considerations by which their judgments were controlled.
Of that case, it may be said, that the articles burned, for aught that appears, might as well have been used, and were as well adapted for the spars and rigging of some other vessel as that for which they were furnished. If substantially as valuable, and well adapted for such a use as that for which they had been bought, the fact is certainly one of some importance.
In that case the ship had been launched before the fire occurred. As a matter of substance, she had been built, but was not rigged, nor in every other respect fully finished.
In this case, the work of building had not so far progressed, as to have placed the different parts in such position as to have given them even the form of a skeleton of the “ barque building.” Unless the words, “ on the stocks,” are to be regarded as of themselves restrictive of the meaning, which would otherwise be given to the words, a “ barque building,” we cannot think effect will be given to the intention of the parties, otherwise than by holding that all the materials which had been wrought with the intent that they should be, and which were fitted to be parts of the contemplated barque, and which, by reason of such adaptation, were valueless for other purposes, which were lying in the ship-yard in the appropriate place to be, and with the intent that they should be incorporated into the structure, were parts of the “ barque building,” within the meaning of the words as used in the policy in question.
"We think the words, “on the stocks,” were not used to restrict ‘the natural meaning of the words, “ barque building,” but merely to indicate the parts on the stocks as specific parts of the barque to be built, and the locality which the keel was to occupy until the structure was completed, and to aid in determining, in case of a loss by fire, whether parts of a vessel or bark, fitted and ready to be incorporated into the body of a vessel, were actually parts of the intended barque or not.
Although the case is not free from doubt, yet we cannot resist the conviction, that the frames that were burned were as much parts of the contemplated barque as the keel on the stocks, within the»meaning and intent of the parties, as evi *204 denced by the fair construction of their contract. The judgment appealed from must therefore be affirmed.